12 F.3d 1108
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Arthur S. SERWANO, Petitioner,
Sarah N. Serwano, Petitioner,
Priscilla C. Serwano, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-70177.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 31, 1993.
Decided Nov. 16, 1993.
 
 Before: CHOY, D.W. NELSON, and NORRIS, Circuit Judges
 MEMORANDUM*
 Arthur Serwano petitions for review of the Board of Immigrations Appeals' ("BIA") determination that he and his family are not eligible for asylum under Immigration and Naturalization Act Sec. 208(a) and are not entitled to withholding of deportation under INA Sec. 243(h). We grant the petition for review and hold that the BIA's decision is both unsupported by substantial evidence on the record as a whole and legally erroneous. Accordingly, we reverse the BIA's rejection of the Serwano's application for asylum and remand for the Attorney General to exercise her discretion. We also remand so that the BIA can determine anew whether the petitioner and his family are entitled to withholding of deportation.
 * The BIA concluded that Serwano is not eligible for asylum because he "failed to present credible evidence to support his claim." BIA Opinion at 5. The BIA's determination "must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.' " INS v. Elias-Zacarias, 112 S.Ct. 812, 815 (1992) (quoting INA Sec. 101(a)(42)(A)). We hold, for two reasons, that the BIA's determination is unsupported by substantial evidence. First, the BIA's adverse credibility findings are based exclusively upon several inconsistencies in the testimony of Serwano and his wife, Sarah. These inconsistencies are minor and therefore insufficient to support a negative credibility finding. See Aguilera-Cota v. INS, 914 F.2d 1375, 1382 (9th Cir.1990); Platero-Cortez v. INS, 804 F.2d 1127 (9th Cir.1986). Second, and even more important, the BIA neglected to consider relevant testimony and two highly probative pieces of evidence in the record that lend support to Arthur Serwano's fear that he will face persecution if returned to Uganda.
 * While an Immigration Judge's ("IJ") findings are granted substantial deference, "a trier of fact who rejects a witness's positive testimony because in his or her judgment it lacks credibility should 'offer a specific, cogent reason for [his] disbelief.' " Aguilera-Cota, 914 F.2d at 1381 (9th Cir.1990) (citation omitted). Such reasons "must be substantial and must bear a legitimate nexus to the finding." Id.
 The IJ and the BIA did not find that the Serwanos lied. Rather, they concluded that they "enlarged upon the facts to a degree." BIA Opinion at 3. Specifically, they pointed to three inconsistencies--inconsistencies which the BIA relied upon exclusively. First, the BIA noted that while Arthur ultimately testified to having been a boxer who represented the UNLA government and to having been detained and beaten by the Ugandan government, he did not report these facts and incidents on his asylum application.
 We have held that a failure to file an application form that is as complete as might be desired is not enough to form the basis of an adverse credibility finding. Aguilera-Cota v. INS, 914 F.2d 1375, 1382 (9th Cir.1990). Rather, the critical question is whether the evidence suggests that the "petitioner changed his account of the events between the time he completed the asylum application and the time he gave his oral testimony." Id.
 There is no such indication here. Arthur's declaration, submitted before his oral testimony and two weeks after his application, mentions his role as a UNLA boxer and his detention. Moreover, the BIA fundamentally mischaracterizes the crux of Arthur's claim. It indicates that Arthur based his application for asylum on his capture following the UNLA's overthrow and on his notoriety as a boxer. His declaration, however, places greater emphasis on his wife Sarah's kidnapping, statements the army made to her that it was looking for him, and information he acquired about the repression of former UNLA soldiers.
 The other two inconsistencies the BIA pointed to in its opinion are equally immaterial. The Board noted that Arthur testified that he took refuge in a church following his detention, while his wife testified that she and her husband lived in an apartment for two months before moving to the church. In addition, Arthur testified that he lived in the church for ten months. The INS produced evidence, however, that he twice left Uganda to attend boxing matches abroad. We do not find these inconsistencies sufficiently substantial to justify the BIA's failure to give due weight to the detailed testimony of the Serwanos and to the supporting documents in the record.
 B
 Even more important in our analysis are several salient facts in the record of which the BIA failed to take note. The BIA focused entirely on inconsistencies in Arthur's testimony, even though Arthur's declaration specifically relies upon Sarah's kidnapping at the hands of the army and on information concerning the persecution of other UNLA members.
 Sarah Serwano testified that army members came to her mother's home on several occasions, threatening her and inquiring where her husband could be found. She indicated that she was subsequently kidnapped along with her six-month-old daughter, detained, beaten, interrogated about her husband's whereabouts, and nearly raped by army members.
 This Circuit has recognized the "relevance of violence directed against an alien's family members" in considering asylum applications. See Hernandez-Ortiz v. INS, 777 F.2d 509, 515 (9th Cir.1985). Sarah's detention is particularly relevant here because of her testimony that her captors were interested in learning of Arthur's location. The BIA's failure to make mention of Sarah's assertions reflects a failure to consider the record as a whole.[1]
 The BIA also failed to discuss the IJ's legal conclusion that Sarah Serwano's kidnapping, interrogation, and abuse do not "rise[ ] to the level of persecution." IJ Opinion at 9. The IJ based this determination on the fact that Sarah was ultimately released and that no corroborating evidence of physical abuse was presented. His conclusion constitutes an error of law. First, it reflects a misunderstanding of Arthur Serwano's application for asylum. The claim is not that Sarah suffered past persecution, but rather that her previous encounters with the government, coupled with the army's statements to her that it sought Arthur, provide Arthur with strong reason to fear persecution if deported. Second, in Aguilera-Cota v. INS, we held that because "persecutors are hardly likely to provide their victims with affidavits attesting to their acts of persecution," testimony concerning a threatening note and a visit by a stranger shortly afterwards "constitutes 'specific evidence' sufficient to support a reasonable fear that the petitioner faces persecution." 914 F.2d at 1380 (citation omitted). Here, similarly, Sarah's testimony about her kidnapping, interrogation, and near-rape constitutes evidence that gives credence to Arthur's fear of persecution.
 Also salient to the Serwano's application but ignored by BIA (as well as the IJ) is evidence in the record of the repression of former UNLA army members. Two documents detail the dangers Arthur may face if returned to Uganda. The first, a letter from a former Ugandan intelligence officer who escaped to London, warns Arthur not to return to Uganda and states that a friend and former army member was shot by government agents. Another document, an affidavit from a Ugandan refugee, states that former UNLA soldiers are being imprisoned and killed. By focusing solely on three inconsistencies in Arthur's story and neglecting to evaluate this evidence, the BIA again failed to consider the record as a whole, as it is required to do.
 II
 The BIA also concluded that, credibility aside, the Serwanos were nonetheless ineligible for asylum as a matter of law. We review the BIA's legal conclusions de novo and hold that it applied the wrong legal standard to the facts of Serwano's application.
 The BIA concluded that the Serwano's application for asylum must be denied because "[t]here was no indication that [Arthur] had been specifically targeted" for persecution. BIA Opinion at 5. An individual, however, is not required to prove that he would be "singled out individually" for persecution, if he can establish either a "pattern or practice in his country of nationality ... of persons similarly situated to the applicant on account of ... membership in a particular social group, or political opinion" or "his inclusion in and identification with such group of persons such that his fear of persecution upon return is reasonable." 8 C.F.R. Sec. 208.13(b)(2)(i). The letters from Arthur Serwano's former army colleagues establish that former UNLA members are being persecuted, and there is no dispute that Arthur was a member of that group. It was therefore error for the BIA to conclude that Serwano had to prove that he would be singled out for persecution, and that his circumstances consequently did not constitute persecution within the meaning of the Act.
 III
 We hold that the record considered as a whole, "when properly credited and when viewed in light of the applicable legal principles," Aguilera-Cota, 914 F.2d at 1383, compels the conclusion that Arthur Serwano faces a reasonable fear of persecution if he returns to Uganda. Accordingly, Serwano and his family are eligible for asylum, and we remand his application to the Attorney General so that she may exercise her discretion under Sec. 208(a) of the INA. We also remand the case to the BIA so that it may determine, in light of this memorandum, whether Arthur Serwano has met the more stringent requirements of Sec. 243(h) and is entitled to withholding of deportation.
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Although the IJ did take note of Sarah's testimony, he dismissed it on the basis of a single inconsistency, noting that Sarah testified at one point that she lived in a church attic for five months and at another point claimed that her residence in the church had been for a year. This minor inconsistency is insufficient to support the IJ's negative credibility finding