114 F.3d 1195
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Luis Felipe QUIROA-FUNES, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 95-70889.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 7, 1997.
Decided May 21, 1997.
 
 1
 Before: FLETCHER and PREGERSON, Circuit Judges, and WEXLER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Petitioner Luis Felipe Quiroa-Funes, a native and citizen of Guatemala, appeals the order of the Board of Immigration Appeals ("BIA"), affirming the order of an immigration judge ("IJ"), denying petitioner's application for asylum and withholding of deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a) and 1253(h). Petitioner claims that he has established a well-founded fear of persecution if he returns to Guatemala on the basis of anonymous threats that he received as a result of his membership in the National Liberation Movement Party ("MLN").
 
 
 4
 Petitioner entered the United States on or about February 1, 1991, near San Ysidro, California. On March 4, 1994, an Order to Show Cause ("OSC") was issued to petitioner charging deportability under section 241(a)(1)(B) of the Immigration and Nationality Act, for having entered the United States without inspection. On June 23, 1994, he filed a request for asylum under section 208(a), which is also reviewed as an application for mandatory withholding of deportation under section 243(h). Alternatively, petitioner requested voluntary departure under section 244(e). After a full hearing on April 24, 1995, the IJ denied petitioner's applications for asylum and withholding of deportation.[1] The IJ denied petitioner's request for voluntary departure as well. Petitioner appealed to the BIA, which affirmed the IJ's denial of asylum and withholding of deportation, but reversed the IJ's denial of voluntary departure.
 
 
 5
 We have jurisdiction pursuant to 8 U.S.C. § 1105(a), and we affirm.
 
 
 6
 The BIA's denial of asylum relief, including credibility findings, must be upheld if supported by reasonable, substantial, and probative evidence in the record. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Review is for an abuse of discretion. Ramos-Vasquez v. INS, 57 F.3d 857, 861 (9th Cir.1995). Factual findings underlying the decision, including whether the alien has proved a well-founded fear of persecution, are reviewed for substantial evidence. Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995). The BIA's decision whether to withhold deportation pursuant to section 243(h) is reviewed for substantial evidence. Berroteran-Melendez v. INS, 955 F.2d 1251, 1255 (9th Cir.1992). To reverse the BIA's factual findings, we must find that the evidence not only supports a contrary conclusion, but compels it. Eliaz-Zacarias, 502 U.S. at 481 n. 1.
 
 
 7
 Where, as here, the BIA affirmed based on the IJ's findings that petitioner's testimony was not credible, we accord the IJ's credibility findings substantial deference. Turcios v. INS, 821 F.2d 1396, 1399 (9th Cir.1987). However, the findings must be supported by "specific, cogent reason[s]." Berroteran-Melendez, 955 F.2d at 1256. "The IJ must not only articulate the basis for a negative credibility finding, but those reasons must be substantial and must bear a legitimate nexus to the finding." Aquilera-Cota v. INS, 914 F.2d 1375, 1381 (9th Cir.1990).
 
 
 8
 Petitioner contends that the BIA erred in concluding that he was not credible and therefore did not establish a well-founded fear of persecution based on the threats that he received as a result of his membership in the National Liberation Movement party. We disagree.
 
 
 9
 Petitioner testified that he believed that he had entered the United States in February 1991, that he was a member of the National Liberation Movement Party in Guatemala, and had been a member since February 1990. He claimed to have participated in political affairs, specifically distributing fliers in the nation's capital urging people to vote for the party.
 
 
 10
 He testified that he had received anonymous threats urging him to renounce his membership in the political party. He also testified that his brother, a radio commentator, had received threats from an unknown source, and that he believed his brother's death from a heart attack was related to the threats he had received.
 
 
 11
 At the hearing, he submitted in evidence the death certificates of two of his brothers, his membership card for the National Liberation Movement Party, and a letter, dated February 1990, on MLN stationery. Each document was accompanied by a translation. He also submitted a State Department Advisory Opinion on the political situation in Guatemala and his request for asylum.
 
 
 12
 The IJ concluded that petitioner lacked credibility and therefore had not submitted sufficient credible evidence from which the judge might infer a well-founded fear of persecution in Guatemala on account of his membership in a political party. The BIA affirmed, finding that the IJ's conclusion was "supported by the internal conflicts within the testimony and discrepancies between the testimony and the documentary evidence."
 
 
 13
 We conclude that the IJ's credibility finding was supported by specific, cogent reasons based on evidence in the record. Berroteran-Melendez, 955 F.2d at 1256. Petitioner's evidence was internally inconsistent. When initially questioned, he testified that he joined the MLN in February 1990 and remained a member until 1991. Upon being shown the letter that he had introduced as evidence, petitioner changed his testimony and stated that he joined the party in February 1990 and left immediately thereafter.
 
 
 14
 This is not a minor inconsistency, as petitioner now contends. Platero-Cortez v. INS, 804 F.2d 1127, 1131 (9th Cir.1986) (minor inconsistencies as to dates are not relevant to the overall claim for asylum). Petitioner's claim for asylum is based upon his participation in the MLN; if, as his letter and his later testimony indicate, he was a member for less than one month, rather than one year, his claim of being persecuted on the basis of his participation is significantly weakened. It was reasonable for the IJ and the BIA to conclude that this was a serious inconsistency.
 
 
 15
 Petitioner's testimony was also at variance from the information on his asylum application. On his application he stated that neither he nor a member of his family had ever been a member of a political party. At his hearing he stated that he and his brother had been members of the MLN and that he was actively involved: "I was in charge or I would distribute the propaganda."[2] Because active membership in the MLN is central to his claim for asylum, it was reasonable for both the IJ and the BIA to conclude that omission of any reference to political party membership or active participation in his asylum application cast serious doubt on the merits of his claim.
 
 
 16
 His testimony at the hearing is not per se lacking in credibility simply because it includes details that are not set forth in the asylum application. Lopez-Reyes v. INS, 79 F.3d 908, 911 (9th Cir.1996) (citing Aquilera-Cota v. INS, 914 F.2d 1375, 1382 (9th Cir.1990)). Petitioner contends that he was assisted in filling out his asylum application by someone who was not qualified to do so and that it was not complete. It would be understandable if his testimony had expanded upon the details of a claim only outlined on an asylum application, especially if petitioner was assisted by someone that he did not entirely trust or with whom he did not communicate well. But here, petitioner's testimony specifically contradicted his application on a central element of his claim: membership in a political party. It was reasonable for the IJ and the BIA to conclude that such an omission cast doubt on petitioner's credibility.
 
 
 17
 Petitioner's testimony was also inconsistent with his asylum application regarding the character of the persecution he claims to have suffered in the past and fears in the future. On his application he states that he was maltreated and interrogated by the guerrillas on account of his political beliefs. He also states that he fears that he would be persecuted, discriminated against, and assassinated by leftist guerrillas who "have a strategy of assassinating anyone who does not want to join them." He does not specifically mention any anonymous threats against himself or his brother, or his brother's heart attack. At his hearing he did not mention any interrogation or maltreatment by the guerrillas and stated that he had never been harmed by any group other than the threats he claimed to have received. Faced with such inconsistencies in the record, it was reasonable for the IJ and the BIA to conclude that petitioner has failed to support his claim to asylum with any credible evidence.
 
 
 18
 On appeal, petitioner contends that these inconsistencies were not relevant to his claim of persecution. We disagree. There were inconsistencies as to every element of his claim: membership in a political party; active participation in that party; and the receipt of threats as a result of the participation.
 
 
 19
 Petitioner asserts on appeal that he was nervous and confused at the hearing. This does not readily explain why his asylum application does not contain information central to his persecution claim or why his testimony at the hearing was inconsistent with the documents that he submitted into evidence.
 
 
 20
 The BIA reversed the IJ's finding that petitioner's testimony was the equivalent of "giving false testimony to obtain a benefit under the Act" that would preclude him from establishing the good moral character required to obtain voluntary departure under section 244(e), 8 U.S.C. § 1254(e).[3] Petitioner contends that this holding is tantamount to the BIA affirmatively holding that petitioner's testimony was "not dishonest." The BIA declined to find that petitioner gave false testimony for the purposes of obtaining an immigration benefit because there was no testimony by the petitioner acknowledging the falsity of his testimony or independent documentary evidence clearly demonstrating its falsity. However, such a conclusion does not undermine the BIA's finding in respect to petitioner's lack of credibility because of inconsistencies in his evidence.
 
 
 21
 Petitioner has not established a well-founded fear of persecution if he returns to Guatemala. He therefore has failed to satisfy the higher standard for withholding of deportation under section 243(h), 8 U.S.C. § 1253(h). See Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.1995) ("[F]ailure to satisfy the lesser standard of proof required to establish eligibility for asylum necessarily results in a failure to demonstrate eligibility for withholding of deportation as well.").
 
 
 22
 We affirm the denial of asylum and the denial of withholding of deportation. We affirm the grant of voluntary departure.
 
 
 23
 AFFIRMED.
 
 
 
 *
 Honorable Leonard D. Wexler, Senior United States District Judge for the Eastern District of New York, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Petitioner initially appeared in deportation proceedings on May 24, 1994. He requested, and was granted, additional time to obtain counsel. On June 23, 1994, he appeared before the IJ, but without counsel. At this hearing, he conceded deportability and requested asylum. On April 24, 1995, there was a hearing on the merits of his asylum claim. At this hearing he was represented by counsel
 
 
 [2]
 The content of this propaganda was "vote for the ... National Liberation Movement Party."
 
 
 [3]
 8 U.S.C. § 1254(e)(1) allows the Attorney General in her discretion, to permit any alien under deportation proceedings to depart voluntarily from the United States at his own expense if such alien shall establish to the satisfaction of the Attorney General "that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure." (West 1996)