**Jose Oscar ARTIGA TURCIOS, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

No. 86-7381.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 12, 1987.

Decided March 24, 1987.

As Amended on Denial of Rehearing and Rehearing En Banc Oct. 1, 1987.

---

Carolyn Patty Blum, Berkeley, Cal., and Susan Giersbach Rascon, Phoenix, Ariz., for petitioner.

Jane A. Williams and Ellen Sue Shapiro, Washington, D.C., for respondent.

Before HUG, SCHROEDER and ALARCON, Circuit Judges.

SCHROEDER, Circuit Judge:

Jose Oscar Artiga Turcios (Artiga), a native of El Salvador, petitions for review of his application for withholding of deportation under section 243(h) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h)(1982), and his application for asylum under section 208(a) of the Refugee Act of 1980, 8 U.S.C. § 1158(a) (1982). In the alternative, Artiga seeks review of his application for voluntary departure under section 244(e) of the Immigration and Nationality Act, 8 U.S.C. § 1254(e) (1982).

BACKGROUND

Artiga is a 20–year-old native of El Salvador who entered this country by crossing the Mexican border without inspection on September 1, 1985. Deportation proceedings were initiated against him on that same date. Artiga admitted deportability and applied for withholding of deportation and asylum. He has remained in INS custody since his arrival in the United States.

In support of his application for withholding and asylum, Artiga filed a form I–589 detailing his fear that anti-government guerrillas were looking for him because of his specialized combat training while in the Salvadoran Army. His application was supported by numerous documents describing the political situation in El Salvador and the danger facing refugees returned to that country. Artiga also testified on his own behalf before the Immigration Judge.

Artiga testified that his life would be threatened by anti-government guerrillas if he is returned to El Salvador. Artiga voluntarily served in the Salvadoran Army between 1982 and 1984. He re-enlisted in March 1985 and was classified as a soldier first-class. Upon his re-enlistment, his military friends gave him the nickname "Chuca Repollo." He was subsequently chosen as one of three men in his company to receive a specialized two-month course on survival and how to attack the enemy. He testified that he participated in combat against the guerrillas both before and after completing this specialized training. He estimated that fifteen to thirty guerrillas were killed during skirmishes in which he participated.

Artiga was discharged from the military for health reasons. Only four days after his discharge, four men came to his neighborhood looking for him. Artiga testified that he had been at a doctor's office and, upon his return, his neighbor Carlos told him that four men were asking for "Chuca Repollo." Carlos pointed the men out to Artiga from a distance and warned him to leave because he might be killed. Artiga testified that he was positive the men were guerrillas because (1) they knew his military nickname, (2) if the men were from the military they would have known his exact address, (3) he did not recognize any of them, (4) he saw bulges in their clothing which he believed to be a new type of machine gun carried by guerrillas, and (5) he had read about former servicemen being targeted and killed by guerrillas. Artiga further testified that as soon as he saw the men he got on a bus and quickly left the area. Following a second incident when two men came looking for him, Artiga left El Salvador. Artiga believes that the guerrillas want to recruit him because of his specialized combat skills, and will kill him when he refuses.

The Immigration Judge found that Artiga had failed to sustain his burden of showing that he would be subjected to persecution if he is returned to El Salvador. She denied Artiga's applications for asylum, relief from deportation, and voluntary

departure. The Board of Immigration Appeals (BIA) dismissed Artiga's appeal because he "presented no objective evidence which demonstrates that he as an individual would be singled out and targeted for persecution." We examine the factual findings of the BIA to determine whether they are supported by substantial evidence, and will reverse only if the BIA's conclusions are not substantially reasonable. *Sanchez-Trujillo v. INS*, 801 F.2d 1571, 1578 (9th Cir.1986).

## DISCUSSION

### I. *Withholding of Deportation*

■ In order to qualify for withholding of deportation an alien must establish a "clear probability" that he will be subject to persecution by the government, or a group that the government cannot control, on account of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1253(h) (1982); *Canjura-Flores v. INS*, 784 F.2d 885, 888 (9th Cir.1985); *Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1284 (9th Cir. 1984). Clear probability means "more likely than not." *INS v. Stevic*, 467 U.S. 407, 425, 104 S.Ct. 2489, 2498, 81 L.Ed.2d 321 (1984). If the alien meets this burden and is not a security risk to the United States, the Attorney General is prohibited from deporting the alien. *Id.* at 421 n. 15, 104 S.Ct. at 2496 n. 15.

■ To establish that persecution is more likely than not, the alien must provide some concrete evidence of the probability of persecution. *Canjura-Flores*, 784 F.2d at 888. General evidence of violent conditions in the alien's home country is not sufficient in itself to establish a clear probability of persecution. *Id.* The alien is not, however, required to provide independent corroborative evidence of the threats of persecution. *Bolanos-Hernandez*, 767 F.2d at 1285. An alien's own testimony regarding specific threats can establish a clear probability of persecution, if credible and supported by general documentary evidence that the threats should be considered serious. *Id.*

■ We consider the alien's testimony carefully because an alien seeking asylum is often limited in the evidence he can obtain to show proof of potential persecution. *Platero-Cortez v. INS*, 804 F.2d 1127, 1130 (9th Cir.1986). The alien's testimony may, of course, be discredited by inconsistent statements and by the witness' demeanor. *Id.* When the Immigration Judge and the BIA have not made any findings regarding the petitioner's credibility, however, we presume that they have found the petitioner's testimony credible. *Id.* at 1131; *Canjura-Flores*, 784 F.2d at 888–89. Here, Artiga's testimony was uncontroverted. His oral testimony was in all respects consistent with his original written asylum application. Moreover, the INS concedes that neither the Immigration Judge nor the BIA found that Artiga's testimony was not credible. Without such a finding, we accept his testimony as credible and find that he has shown a clear probability of persecution under the applicable standards.

The I–589 form and Artiga's testimony established that he had been singled out and specifically sought by men he reasonably believed were guerrillas. Because of Artiga's former affiliation with the Salvadoran Army, his specialized combat training, and his participation in battles with the guerrillas, the guerrillas are likely to consider him a political opponent. The immediacy of the men's searches in Artiga's neighborhood following his discharge from the military appears to be more than mere coincidence. The fact that these men asked for Artiga by his combat name and that Artiga did not recognize any of the men support his conclusion that the men were guerrillas. Only military friends or the guerrillas would know his combat nickname. Moreover, there is no reasonable explanation for the suspicious bulges in the men's clothing except concealed weapons. Indeed, there is no reasonable explanation in the record for any of their actions other than that the men sought forcibly to recruit Artiga to the guerrilla cause.

The government argues that because Artiga did not meet the men face to face, there has been no cognizable threat. The government asks us to hold that to qualify for relief, petitioner should have provoked

an armed confrontation. Such an approach ignores reality. We have already held that withholding was appropriate in a case very similar to this one. In *Canjura-Flores,* we reversed the BIA's denial of withholding of deportation and asylum where the petitioner believed that the government was looking for him and intended to jail or kill him because of his activities with a leftist organization. 784 F.2d at 887. There, the petitioner never confronted any accusers and received no direct threat. He did receive information from a third party that, after he left El Salvador, the National Guard had come to his home and asked for him. *Id.* No material distinction exists between *Canjura-Flores* and this case. Indeed, the petitioner's evidence here is stronger than the evidence in *Canjura-Flores,* for in this case the petitioner testified he personally saw the men who were looking for him and that their actions prompted his flight from El Salvador. Accordingly, we reverse the denial of the petition for withholding of deportation.

### II. *Asylum*

 Eligibility for political asylum requires the alien to show that he qualifies as a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A) (1982), which defines refugee as

> any person who is outside any country of such person's nationality ... who ... is unable or unwilling to avail himself or herself of the protection of that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....

The Supreme Court has now affirmed *Cardoza-Fonseca v. INS,* 767 F.2d 1448 (9th Cir.1985), *aff'd,* — U.S. —, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), and decided that this well-founded fear standard is less stringent than the clear probability standard. Because we have concluded that Artiga has established a clear probability of persecution, Artiga has necessarily met the well-founded fear standard sufficient to support his asylum application.

Because only a grant of asylum automatically permits an alien to apply for permanent residence status after one year, 8 U.S.C. § 1159(b), Artiga may wish to be granted asylum in addition to prohibition against deportation. We therefore remand Artiga's asylum claim to the Attorney General so that he may exercise his discretion. *Id.* at § 1158(a); *Platero-Cortez,* 804 F.2d at 1132.

CONCLUSION

Artiga has introduced specific evidence that his life has been threatened because he is politically opposed to the anti-government guerrillas. Because he has been singled out and sought by men he reasonably believes to be guerrillas, the BIA's conclusion that the petitioner failed to show he had been targeted for persecution is unreasonable. There is a clear probability that Artiga would be subject to political persecution if he returns to El Salvador. He also meets the eligibility requirements for a grant of asylum. Because of our holding, we need not address the voluntary departure application.

REVERSED.