Jose Roberto HERNANDEZ, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 00–70920.

I & NS No. A72–174–709.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 2002.

Decided April 22, 2002.

Before WARDLAW, W. FLETCHER, Circuit Judges, and FOGEL,* District Judge.

## MEMORANDUM **

Jose Roberto Hernandez, a native and citizen of El Salvador, appeals the decision of the BIA to deny asylum and withholding of deportation. Hernandez claims that ex-

guerrillas will assassinate him on the basis of his past military service if he is deported to El Salvador. We reverse the BIA's holding that Hernandez's fear is not objectively reasonable.

According to his asylum application, Hernandez entered the United States on May 7, 1994. On May 1, 1996, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause charging Hernandez with deportability pursuant to Immigration and Nationality Act ("INA") former § 241(a)(1)(B), 8 U.S.C. former § 1251(a)(1)(B), for entering the United States without inspection.[1] On October 2, 1996, Hernandez conceded deportability before an immigration judge ("IJ"), and requested asylum, withholding of deportation and voluntary departure in the alternative.

At the hearing on the merits of his claims for relief from deportation, Hernandez testified that he had served as a corporal in the Salvadoran army, during which time his unit detained a suspected guerrilla and thereafter was threatened and attacked by guerrillas. After he was discharged, his father received two visits from unidentified men whom Hernandez believed were guerrillas seeking to assassinate him on the ground that he had belonged to the military. Hernandez left the country for the United States shortly thereafter. The IJ denied Hernandez's requests for asylum and withholding of deportation. The BIA affirmed the IJ's order, holding that Hernandez did not establish an objectively reasonable basis to fear future persecution in El Salvador.

---

* The Honorable Jeremy D. Fogel, United States District Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. Because Hernandez's deportation proceedings were initiated prior to April, 1997, the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009, govern.

Hernandez timely petitioned the Ninth Circuit for review of the BIA's decision.

■ Given the similarity of the facts in this case to those in *Montecino v. INS,* 915 F.2d 518 (9th Cir.1990) and *Artiga Turcios v. INS,* 829 F.2d 720 (9th Cir.1987), we hold that Hernandez's fear of persecution is subjectively genuine and objectively reasonable. *See Duarte de Guinac v. INS,* 179 F.3d 1156, 1159 (9th Cir.1999). The government argues that even if Hernandez is entitled to a presumption of a well-founded fear of persecution, it has successfully rebutted this presumption through evidence of changed country conditions.

■ The government's only support for its contention that country conditions in El Salvador have changed to the extent that Hernandez cannot demonstrate a well-founded fear of future persecution are the 1996 United States Department of State Profile of Asylum Claims & Country Conditions for El Salvador ("Profile"), and Hernandez's admission that his immediate family in El Salvador has not been harmed. The Profile contains only two short paragraphs on the "Changed Country Situation" in El Salvador:

> Since the demobilization of the last guerrilla combat units in December 1992 brought to a successful conclusion the demilitarization phase of the U.N.-brokered peace accords, all claims from Salvadoran applicants should be reviewed in light of the sweeping changes which have taken place in that country. Although violent organized criminal gangs, sometimes called *maras,* have taken the place of political violence as the major security concern in El Salvador, *many asylum applications continue to treat the situation today as merely an extension of the civil war.*
>
> Because many applicants have lived in the U.S. for some time, most asylum claims from El Salvador still derive from events that occurred prior to the peace accords, although *some applicants have alleged current threats, harassment, and even murder by ex-guerrillas or government police/military forces.* Many of these claims could involve the settling of continuing personal and institutional animosities by ex-combatants of both sides; but *analysis of each specific claim will be required.*

(emphasis added). As shown, the Profile provides a fairly ambiguous picture of the current state political violence. The Profile makes a vague reference to "sweeping changes" since the 1992 peace accords, but concedes that there still exist allegations of threats, harassment and murder by ex-guerrillas. We have held that information about only general changes in the country is not sufficient to rebut the presumption of a well-founded fear of persecution. *Salazar–Paucar v. INS,* 281 F.3d 1069, 1076 (9th Cir.2002).

The continuing safety of Hernandez's immediate family is irrelevant to this case. Although we have allowed ongoing family-safety "to mitigate a well-founded fear, particularly where the family is similarly situated to the asylum applicant," *Lim,* 224 F.3d at 935, Hernandez's granddaughter and wife are not similarly situated for the obvious reason that they never served as military combatants against guerrillas. We therefore hold that at the time the BIA considered the case, the government did not show that country conditions had changed to such an extent that Hernandez no longer had a well-founded fear of persecution. *See Gafoor v. INS,* 231 F.3d 645, 656 n. 6 (9th Cir.2000) ("Where the petitioner properly established his eligibility on the record made before the BIA, that eligibility must be accorded its proper legal effect.")

We REVERSE the BIA's decision, holding that Hernandez has met the standard for asylum eligibility, and REMAND for an exercise of discretion by the Attorney General with respect to whether Hernandez's asylum request should be granted.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

** The Honorable Richard F. Cebull, United States District Judge for the District of Montana, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the