Alejandro REYES–MELENDEZ,
Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 02–70526.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 2003.

Filed Sept. 4, 2003.

Andrew Knapp, Law Offices of Claire Cifuentes, Los Angeles, CA, for the petitioner.

Allen Hausman, United States Department of Justice, for the respondent.

* Honorable Cindy K. Jorgenson, United States District Judge for the District of Arizona, sit- ting by designation.

Before PREGERSON, THOMAS, Circuit Judges, and JORGENSON,* District Judge.

**OPINION**

THOMAS, Circuit Judge.

Alejandro Reyes–Melendez ("Reyes–Melendez") petitions for review of the denial by the Board of Immigration Appeals ("BIA") and Immigration Judge ("IJ") of his application for suspension of deportation. He contends that he was denied a full and fair hearing because of the IJ's bias. We agree and grant the petition for review.

I

Reyes–Melendez, a citizen of Mexico, entered the United States with his wife, Maria Villanueva, and first son, Alejandro Reyes, on November 2, 1988. Maria and Alejandro also are Mexican citizens and are without status. On December 30, 1996, the INS issued an Order to Show Cause, which placed Reyes–Melendez in deportation proceedings.

Reyes–Melendez appeared before an IJ, conceded deportability, and requested relief alleging that he is eligible for suspension of deportation. He filed his application for suspension of deportation on July 8, 1997, and included a supplemental declaration, copies of the birth certificates for his United States citizen daughter, Jacqueline Reyes, and United States citizen son, David Reyes, and numerous documents attesting to his physical presence, good mor-

al character, and claim to extreme hardship if deported.

Reyes–Melendez is a registered nursing assistant who cares for seriously ill and disabled individuals. His patients and their family members were grateful for his care, filling out commendations at the time of his services and writing letters on his behalf in reference to his suspension application. He has never received public assistance.

In December 1994, Reyes–Melendez was arrested for driving under the influence of alcohol. He successfully completed a court-ordered alcohol program and attended Alcoholics Anonymous meetings. His license was suspended, and he was arrested on two occasions for driving with a suspended license. Reyes–Melendez attested that he was driving to travel to his two jobs, to which he claimed he had no other transportation. In 1996, Reyes–Melendez was arrested again for driving under the influence of alcohol. He contends that with the exception of the one relapse that led to his arrest, he had remained sober. He alleges that he is in counseling to prevent life's pressures from leading to another relapse.

Shortly after his first conviction, Reyes–Melendez began to experience marital problems. He had an affair with his co-worker, Elizabeth Arroyo, who became pregnant. Elizabeth gave birth to David Reyes on February 26, 1996. The affair ended and Reyes–Melendez became no longer romantically involved with Elizabeth. Reyes–Melendez revealed the situation to his wife, Maria, and they agreed to remain together "for the sake of [the] children." Maria became pregnant in early 1996 and gave birth to Jacqueline Reyes on September 29, 1996.

Reyes–Melendez lives with his wife Maria and their children Alejandro and Jacqueline. Elizabeth lives in a separate apartment with David. Reyes–Melendez spends time with all three children each day and financially supports David by offsetting Elizabeth's rent and contributing to insurance and other expenses. Reyes–Melendez also attends church regularly, alternating between Catholic services and accompanying Elizabeth to her Jehovah's Witness services.

In his suspension application, Reyes–Melendez alleged that he and his United States citizen children would experience extreme hardship if he were deported. Reyes–Melendez alleges that he would be unable to continue his career as a nursing assistant and to provide for his family. His license in California is not recognized in Mexico and he does not have savings to attend school for a comparable certificate in Mexico. Although he has parents and ten siblings living in Mexico, he is not close to any of them. Because many of them are alcoholics, he chooses to remain distant in an effort to stay sober.

His daughter Jacqueline was born with a genetic sickle cell hemoglobin S trait. If she receives adequate health care, she will be able to avoid having children with birth defects. Jacqueline also has a tumor on her head, which requires monitoring to determine whether it develops into malignant cancer or if it spreads to other areas. Reyes–Melendez alleges that he would not be able to afford adequate health care for his daughter to monitor her conditions if he lived in Mexico.

Reyes–Melendez also contends that if he were deported, his son David would remain in the United States with Elizabeth. Reyes–Melendez alleges that his decreased economic opportunities in Mexico likely would result in his inability to provide David with adequate financial support. Because Elizabeth is unmarried and taking care of a total of three children, Reyes–Melendez speculates that she would be

unable to make up the difference from the lost financial support.

At the IJ hearing, direct examination began with Reyes–Melendez explaining his relationship with his family who still lived in Mexico. Reyes–Melendez began to testify with respect to the abuse he experienced as a child. The IJ cut him off, explaining that she had reviewed the record and noted that the abuse was physical and not sexual in nature. The IJ stated that no more testimony was needed to present that point. Counsel complied and continued to ask questions with respect to factors relevant to Reyes–Melendez's showing of extreme hardship.

Shortly afterwards, the IJ interrupted, asking for clarification with respect to "[w]ho is the mother of[your son] David?" After Reyes–Melendez answered, the IJ asked, "So while you were married you had an affair with another woman?" Reyes–Melendez attempted to provide an explanation, and the IJ stated "So you committed adultery."

Counsel reminded the IJ that adultery is no longer a statutory bar to finding good moral character. The IJ responded, "Well, I'm aware of that. But we're talking current. I mean, we're talking two years ago. David was born of another woman, then a year and a half ago, Jacqueline was born of the wife. I mean, what?" She then immediately turned to Reyes–Melendez and asked, "You all live together in the same house, all three of you?"

Reyes–Melendez began to explain the living and financial situation, and the IJ inquired whether he was "hav[ing] on-going [sexual] relations with the mother of David" and whether he was having sex with his wife. After providing further explanation as to why his wife would accompany him to Mexico, the IJ asked "How many other women have you had [sexual]

relations with?," and "How many other children do you have?"

When Reyes–Melendez explained he had no other relationships and no other children, the IJ inquired "How do we know that? I mean—" Counsel cut her off and reminded her that Reyes–Melendez was testifying under oath. The IJ then asked, "So what does Alejandro think of his brother, David? What does he know about all that?"

Counsel shortly ended the direct examination. The IJ's questioning of Reyes–Melendez with respect to David and Elizabeth took up approximately seven of the eighteen transcript pages, or approximately 38% of the direct examination.

After hearing direct and cross, the IJ rendered her oral decision at the hearing. The IJ concluded that Reyes–Melendez met the statutory elements of continuous physical presence and concluded that "[a]s to the good moral character, it appears there is no statutory bar." The IJ, however, continued by determining that he had failed to establish the statutory elements of extreme hardship. The IJ also denied Reyes–Melendez relief as a matter of discretion.

In the content of the decision, the IJ made several snide comments about David and other factors relevant to establishing good moral character and extreme hardship. For instance, the IJ found that "Respondent notes that he has three children, one born in Mexico and two in the United States. Noting the last name, it appears that he is the father of the three, *but further testimony showed that David is from a different woman.*" (emphasis added). With respect to his attendance of religious services, the IJ stated that "[h]e also notes he is a member of the Catholic Church and also says he is participating with the Jehovah's Witness church, and *is*

*curiously a member of both."* (emphasis added).

In discussing the claim that Reyes–Melendez's children would face extreme hardship if he were deported, the IJ heightened her dismissive tone. The IJ appeared to find that Reyes–Melendez's relationship to Elizabeth off-set any claims of hardship, "The respondent concentrated on the extreme hardship occurring to his two United States citizen children, *albeit from two different women.* He explains his relationship in a manner *that his attorney calls cultural."* (emphasis added). The IJ ignored the uncontested U.S. birth certificates in the record and observed that "Jacqueline was born and apparently [is] the offspring of the wife." The IJ also used inflammatory language when observing that Reyes–Melendez "denies that he lived in a menage a trois, but says he is supporting David and the mother in part and he lives with the wife and two children in an apartment."

The IJ also had difficulty referring to Elizabeth or David without asserting moral judgment. The IJ described David as "the offspring of his lover, every day, in fact she gave him a ride today. He did not use the term lover, but I don't know how else to explain it, since he also on the tape said he has no amorous relationship with his wife, although he insists he has been abstaining from any relationship with the woman who drove him today, the mother of David."

The IJ further appeared to be dismissive of Reyes–Melendez's testimony with respect to his alcohol abuse, continued treatment in Alcoholics Anonymous and counseling, and desire to avoid his family members in Mexico who are alcoholics. The IJ stated:

> the respondent wishes the Court to know that if I send him back, he might succumb to alcoholism in Mexico because it runs in his family. However

cross examination already revealed that he drinks for any reason including when he is happy. At the time of his baptismal celebration of his daughter, he says he drank because he was happy. He is not going to lay the blame on the United States Government for this or on me personally if he in the future succumbs to alcoholism.

The IJ then dismissed the claims of hardship to the children because:

> Counsel, in effect, is arguing because he had this illicit relationship, he should be rewarded, he should be allowed to remain in the United States because he has to support his illegitimate child, David, while married and living with the present wife. *On this theory, the more women he can have children with, the better he is off under the Immigration laws, as counsel's interpretation apparently would lend me to find, and I should reward this illicit relationship. The mores may have changed, but I don't think to the point where that is acceptable by a reasonable person.* In any event, I'm not here to legislate. I find extreme hardship has not been established statutorily by respondent and therefore I must deny the application on statutory grounds.

(emphasis added).

The IJ continued her decision by finding that:

> [b]ecause of the various relationships now that respondent appears to enjoy, a wife, a companion who chauffeurs him around, a child who apparently, he says adores him, not out of the union of the marriage, the alcohol-related convictions, all are significant factors to consider in the discretionary arena and I would deny the application for suspension as a matter of discretion.

On appeal, Reyes–Melendez alleged that the IJ erred by failing to consider all

relevant hardship factors enumerated in *Matter of Anderson*, 16 I. & N. Dec. 596 (BIA 1978). On February 26, 2002, the BIA affirmed the IJ decision, determining that the IJ considered all relevant factors and that Reyes–Melendez failed to establish statutory eligibility. The BIA declined to reach the IJ's discretionary determination in light of this finding.

## II

Under the Immigration Reform and Illegal Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546 (Sept. 30, 1996), deportation proceedings initiated prior to April 1, 1997, for which a final order of deportation is issued after October 30, 1996, are subject to the "transitional rules of judicial review." *Kalaw v. INS*, 133 F.3d 1147, 1150–51 (9th Cir.1997); IIRIRA § 309(c)(4). Because deportation proceedings were initiated against Reyes–Melendez on December 30, 1996 and a final order of deportation was issued on February 26, 2002, the transitional rules apply.

■ "Under the transitional rules, we lack jurisdiction to review the discretionary determination whether an alien seeking suspension of deportation … has met the statutory eligibility requirement of 'extreme hardship.'" *Sanchez–Cruz v. INS*, 255 F.3d 775, 778 (9th Cir.2001) (citing *Kalaw*, 133 F.3d at 1152); *see also* IIRIRA § 309(c)(4)(E). We also lack jurisdiction to review the Attorney General's discretionary decision whether to grant suspension once eligibility is determined.

■ *Sanchez–Cruz*, 255 F.3d at 779; *Kalaw*, 133 F.3d at 1152. IIRIRA also precludes appellate courts from remanding cases to the BIA for the taking of additional evidence under 28 U.S.C. § 2347(c). *Altawil v. INS*, 179 F.3d 791, 793 (9th Cir. 1999).

■ Notwithstanding these statutory limitations on judicial review, we retain the power to review constitutional due process challenges to immigration decisions. *Ramirez–Alejandre v. Ashcroft*, 319 F.3d 365, 377 (9th Cir.2003) (en banc). We review *de novo* due process challenges to final orders of deportation. *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir.2000). We will grant a petition for review from a BIA decision on due process grounds "if the proceeding was 'so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Colmenar*, 210 F.3d at 971 (quoting *Platero–Cortez v. INS*, 804 F.2d 1127, 1132 (9th Cir.1986)). The alien must also show prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation. *Id.* Because the BIA had jurisdiction under 8 C.F.R. § 3.1(b)(2), and because Reyes–Melendez filed a timely petition, we have jurisdiction over Reyes–Melendez's petition pursuant to 8 U.S.C. § 1252(a).

## III

■ "The Due Process Clause requires that aliens 'threatened with deportation' are provided with the right to 'a full and fair hearing.'" *Sanchez–Cruz*, 255 F.3d at 779 (quoting *Getachew v. INS*, 25 F.3d 841, 845 (9th Cir.1994)). "A neutral judge is one of the most basic due process protections." *Castro–Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir.2001). As part of a right to a full and fair hearing, an alien is entitled to a "reasonable opportunity to present evidence on his behalf." *Colmenar*, 210 F.3d at 971 (citations omitted).

■ Reyes–Melendez contends that the IJ violated due process by abandoning her role as a neutral fact-finder. The government disagrees, arguing that the record does not contain any evidence of bias or prejudice. The government's characterizations of Reyes–Melendez's actions as deceptive and the IJ's actions as benign,

relevant inquiries, however, do not comport with the record. Reyes–Melendez offered the birth certificates of his children into evidence before the hearing, and his supplemental declaration explains in detail who are the biological mothers of each of his children. With respect to the IJ's behavior, very early in the hearing, the IJ took over direct examination and accused Reyes–Melendez of moral impropriety. When presented with the facts surrounding the birth of his children, the IJ noticeably became aggressive and offered a stream of non-judicious and snide commentary, inquired into the sexual nature of his relationships with his wife and former paramour, and asked how many women with whom he had engaged in sexual intercourse. Likewise the IJ order, which she rendered at the hearing, was replete with sarcastic commentary and moral attacks on Reyes–Melendez. The IJ mentioned the fact that his children had two different mothers on at least six occasions, and she referred to David and Elizabeth in a number of dismissive terms, including describing his son David as "the offspring of his lover," and Elizabeth as his current lover. The IJ justified her choice of words with, "[Reyes–Melendez] did not use the term lover, but I don't know how else to explain it...."

Furthermore, when explaining the reasons why the IJ found Reyes–Melendez unable to meet his statutory eligibility for suspension, the IJ emphasized that she would not "reward" him for having an "illicit relationship." She repeated this sentiment by stating that any consideration of alleged hardship on account of David would be endorsing a "theory" that "the more women he can have children with, the better he is off under the Immigration laws...." The IJ continued, "[t]he mores may have changed, but I don't think to the point where that is acceptable by a reasonable person."

The record thus indisputably demonstrates that the IJ was hostile towards Reyes–Melendez and judged his behavior as being morally bankrupt. These circumstances are analogous to those found in *Sanchez–Cruz* and *Colmenar* in which an IJ "behaved not as a neutral fact-finder interested in hearing the petitioner's evidence, but as a partisan adjudicator seeking to intimidate the [alien] and his counsel." *Colmenar,* 210 F.3d at 971. The government's argument that the presence of counsel is sufficient to ameliorate against an unfair hearing, in which an IJ fails to act as a neutral fact-finder, is unpersuasive and without legal authority. *See, e.g., Colmenar,* 210 F.3d at 971 (presence of counsel did not shield alien from adverse effects of a biased IJ); *Sanchez–Cruz,* 255 F.3d at 780 (same).

"As a predicate to obtaining relief for a violation of procedural due process rights in immigration proceedings, an alien must show that the violation prejudiced him." *Ramirez–Alejandre,* 320 F.3d at 875. To demonstrate prejudice, an alien need demonstrate only that the IJ's conduct "potentially ... affect[ed] the outcome of the proceedings." *Campos–Sanchez v. INS,* 164 F.3d 448, 450 (1999) (internal quotation marks and citations omitted).

Here, there was undisputed evidence in the record and at the hearing that if Reyes–Melendez were deported, his son would remain with his mother in the United States. The IJ's bias, however, prevented her from considering, yet alone weighing, the impact that such separation would have on Reyes–Melendez and his son. Although we cannot determine whether the circumstances of the father-son relationship constitute extreme hardship, it is undisputed that as a matter of law, the effect of such a separation has been sufficient to meet this statutory requirement. *See, e.g., Salcido–Salcido v.*

*INS*, 138 F.3d 1292, 1293–94 (9th Cir.1998) (finding abuse of discretion for failing to consider impact that separation would have on one year old child); *Gutierrez–Centeno v. INS*, 99 F.3d 1529, 1533 (9th Cir.1996) (finding BIA abused its discretion by failing to give "considerable, if not predominant, weight" to the hardship that will result from family separation).

Accordingly, Reyes–Melendez has demonstrated a probable likelihood that the outcome of his case regarding whether he demonstrated his statutory eligibility for suspension of deportation would have been different if a fact-finder considered the impact that separation would have on himself and his United States citizen son.

Reyes–Melendez also alleges that when the IJ denied Reyes–Melendez's suspension claim in the exercise of her discretion, the IJ's remarks evince her reliance of improper considerations. Although we may not review the IJ's exercise of discretion, a due process violation is not an exercise of discretion. *See, e.g., Antonio–Cruz v. INS*, 147 F.3d 1129, 1130 (9th Cir.1998) ("[A] BIA decision that denies due process does not involve the exercise of discretion and ... therefore, does not preclude review of due process challenges.").

The record demonstrates that the IJ failed to act as a neutral fact-finder when exercising her discretion. The IJ again made snide comments towards David and Elizabeth and made clear her moral disapproval of giving birth to a child outside of "the union of the marriage." Accordingly, Reyes–Melendez was not presented with a neutral fact-finder when determining whether suspension was warranted as a matter of discretion. *See, e.g., Sanchez–Cruz*, 255 F.3d at 779 (observing that even though IJ mentioned he would deny suspension in the exercise of his discretion, alien nonetheless presented a colorable due process claim on account of IJ's im-

proper bias). For the reasons mentioned above, Reyes–Melendez also has demonstrated prejudice with respect to this claim.

In *Matter of Anderson*, 16 I & N Dec. 596, 597 (BIA 1978), the BIA set forth a number of factors that are relevant in establishing a claim of extreme hardship. In his suspension application and on appeal, Reyes–Melendez has alleged that deportation would adversely affect many of those factors, including that his career as a nursing assistant serves as special assistance to the community by caring for elderly and disabled individuals, that his (then) current career advancement proved promising compared to the diminished employment prospects in Mexico, that he has established ties to the community, that he would be separated from family in the United States, that he lacks emotional connections to family members in Mexico, and that he has a support group in this country that assists him with his continued recovery efforts from alcoholism.

At his hearing, the IJ took over direct examination and asked questions and offered hostile commentary about Reyes–Melendez's life. The IJ's questions took up approximately 38% of the time offered on direct examination. Many of the factors in the suspension application were not presented, and for those that were, some were met with sarcastic dismissiveness. For instance, his attendance of religious services received the commentary that "[h]e also notes he is a member of the Catholic Church and also says he is participating with the Jehovah's Witness church, and *is curiously a member of both.*" (emphasis added). Rather than examining the status of Reyes–Melendez's recovery efforts, the IJ attacked him in the following colloquy:

the respondent wishes the Court to know that if I send him back, he might succumb to alcoholism in Mexico be-

cause it runs in his family. However cross examination already revealed that he drinks for any reason including when he is happy. At the time of his baptismal celebration of his daughter, he says he drank because he was happy. He is not going to lay the blame on the United States Government for this or on me personally if he in the future succumbs to alcoholism.

The only reasonable inference from the record establishes that the IJ's moral bias extended to her consideration of factors beyond the separation of Reyes–Melendez and his child.

We may determine neither that Reyes–Melendez has provided sufficient evidence establishing extreme hardship nor that any evidence is sufficient to support a discretionary grant of relief. However, it is undisputed that the factors mentioned in Reyes–Melendez's application are relevant to relief and his inability to present them probably prejudiced his claim. *See, e.g., Urbina–Osejo v. INS*, 124 F.3d 1314, 1318–19 (9th Cir.1997) (error not to consider work as volunteer telephone counselor for AIDS organization as "special assistance to the community," and for not considering economic hardship arising from return to country with "struggling economy"); *Gutierrez–Centeno*, 99 F.3d at 1534 (error for failing to consider non-existent family ties in country of origin, and finding that care of patients with HIV, Alzheimer's, and developmentally disabled "merits the most serious consideration"); *Tukhowinich v. INS*, 64 F.3d 460, 463–64 (9th Cir.1995) (error to not consider non-economic hardship that flows from economic concerns); *Batoon v. INS*, 707 F.2d 399, 402 (9th Cir.1983) (error to not consider dependence on medical treatment on health of alien and alien's family); *Prapavat v. INS*, 662 F.2d 561, 563 (9th Cir.1981) (abuse of discretion to not consider cumulative effect of all relevant factors such as existence of U.S. citizen children, minimal economic opportunities for suitable employment in an underdeveloped country, citizen child's lack of knowledge of the country's language, and expected economic loss). Thus, to the extent that the IJ reached conclusions on Reyes–Melendez's ability to qualify for suspension of deportation before considering all relevant evidence, the IJ violated his right to a fair and full trial with respect to these factors as well.

The INS argues that, pursuant to *Agyeman v. INS*, 296 F.3d 871, 876 (9th Cir. 2002), our review is limited to the BIA decision, and that, relying upon *Ghaly v. INS*, 58 F.3d 1425, 1430 (9th Cir.1995), the BIA's *de novo* review launders any bias held by the IJ, rendering it harmless. This argument is unpersuasive and contrary to existing precedent.

*Ghaly* involved a situation in which evidentiary exhibits that an IJ had refused to review were before and considered by the BIA. *See* 58 F.3d at 1430. By contrast, the instant situation involves an IJ error that precluded the development of a factual record by foreclosing the admission of testimony. The limitation on review set forth in *Agyeman* does not prevent us from reversing the BIA on due process grounds when it reviews a record that an IJ prevented from being fully developed. *See Colmenar*, 210 F.3d at 971; *see also Guadalupe–Cruz v. INS*, 240 F.3d 1209, 1211 (9th Cir.2002) (holding BIA erred by failing to consider the due process claim despite its affirmance of the IJ decision on separate statutory grounds); *Sanchez–Cruz*, 255 F.3d at 778 (considering due process claim even though IJ denied relief on discretionary basis).

For these reasons, we grant the petition for review and remand this case to the BIA for further proceedings consistent with this opinion.

PETITION GRANTED AND RE-MANDED.