**NOT FOR PUBLICATION**

FILED

NOV 08 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NESTOR DARIO MAYORGA-ESGUERRA; PAOLA ANDREA TOTAITIVE-NINO; SILVIA DANIELA MAYORGA-TOTAITIVE, <br><br> Petitioners, <br><br> v. <br><br> ERIC H. HOLDER, Jr., Attorney General, <br><br> Respondent. | No. 06-72917 <br><br> Agency Nos. A097-122-539 <br> A097-122-540 <br> A097-122-541 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 5, 2010
San Francisco, California

Before: REINHARDT, BERZON, and CALLAHAN, Circuit Judges.

Nestor Dario Mayorga-Esguerra ("Mayorga"), his wife, Paola Andrea

Totaitive-Nino, and their daughter, Silvia Daniela Mayorga-Totaitive, natives and

citizens of Colombia, petition for review of the Board of Immigration Appeals'

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

("BIA") order affirming the Immigration Judge's ("IJ") order denying their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Because substantial evidence does not support the BIA's finding that Mayorga lacked a well-founded fear of future persecution on account of political opinion, we grant the petition for review and remand.

1. Mayorga testified at length about his leadership of a "special, . . . highly trained" thirteen-person special forces antiterrorism team responsible for capturing guerillas, including ELN members, and his subsequent membership in an "elite group" of special forces in Bogota that was responsible for "protect[ing] the Nariño House which is equivalent to the White House" and ensuring the security of the "senators of the republic" and foreign dignitaries. He also recounted his contacts with the revolutionary National Liberation Army ("ELN") and the ELN's numerous attempts to recruit him, and he expressed his dedication to the Colombian government. The IJ found Mayorga credible, and the BIA did not make any credibility determination of its own. Thus, we take his testimony as true. *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir. 2004).

2. We uphold as consistent with precedent the BIA's conclusion that the multiple verbal and written death threats Mayorga received following his refusal to

2

join the ELN were insufficient to establish past persecution. *See Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 1999) (telephonic and written death threats by rebel group, without physical confrontation or attacks, were insufficient to establish past persecution).

**3.** Substantial evidence does not, however, support the BIA's conclusion that Mayorga failed to establish a well-founded fear of future persecution on account of his political opinion.[1] Instead, substantial evidence compels the conclusion that Mayorga has a well-founded fear of future persecution in retaliation for his having rejected on political grounds the entreaties to join the ELN. To the ELN, Mayorga remains a "traitor" and thus a target for political violence or killing.

**a.** First, Mayorga's fear of future persecution is well-founded. Mayorga established a significant likelihood that the threats made against him and his family remain substantial. Even though he has now left the army and thus is perhaps unlikely to remain a target for *recruitment* to join the rebel cause, he demonstrated that he remains a target for *retaliation* and that his and his family's lives remain in jeopardy.

---

[1] Because we grant the petition and remand on this basis, we do not decide whether the BIA also erred in finding that Mayorga was not a member of a recognized "social group."

3

While still in the army, Mayorga received two threatening letters and at least three calls from the guerillas, in one of which "they let me know that I had to collaborate, otherwise, should I not collaborate with them, my family, my daughter, they would be kidnapped and killed." Later, after he had left the army, Mayorga checked his home answering machine and heard a message from the ELN. This time, the group said: "You asshole, you rejected our cause, you disobeyed our orders and you are going to pay for this piece of treason with your life." He interpreted this to mean that he "was going to pay for that betrayal," and he explained that "[t]he terrorist groups never forgive a betrayal." Because he knew that the Colombian army could offer him only short-term protection, yet protection "would have [been] required for the rest of [his] life," he did not seek help from the army and instead fled the country. Mayorga added that "if [he] were to return to Colombia," then the ELN "will kill [him] and [his] family." His fear of future persecution is corroborated by the State Department Country Report included in the record, which explained that the ELN engages in politically motivated kidnappings and "unlawful killings." We are therefore compelled to conclude that Mayorga possessed an objectively reasonable well-founded fear of future persecution.

4

**b.** Second, we conclude that in Mayorga's case such persecution would be "on account of . . . political opinion," namely his manifest pro-government allegiance. 8 U.S.C. § 1101(a)(42)(A) (definition of "refugee"). While the mere rejection of membership in a guerilla organization does not constitute a political opinion, *see INS v. Elias-Zacarias*, 502 U.S. 478 (1992), when such rejection is understood by guerillas to be motivated by political objection to the rebels' cause, we have held many times that the persecution that results *is* "on account of" political opinion.

In *Del Carmen Molina v. INS*, 170 F.3d 1247 (9th Cir. 1999), for example, we held that an El Salvadorian guerilla group's threats against a military family were on account of political opinion. After rejecting "[t]he BIA's determination that 'the guerillas' interest in [Molina] did not amount to persecution, but rather to an interest by the guerillas in recruiting her," the court determined that "Molina had an identifiable political opinion" by virtue of the many members of her family who belonged to the military, including two cousins who were killed in service by guerillas. *Id.* at 1249. We held that she had established that "her persecutors persecuted her on account of her actual or imputed opinion." *Id.*

We have subsequently applied *Del Carmen Molina* in another case involving "guerrilla[] threat[s] on account of [the applicant's] imputed anti-guerrilla beliefs,"

5

which were evidenced by the facts to which the applicant credibly testified, without contradiction: "the guerrillas targeted him because they believed he held anti-guerrilla sympathies; that his uncle was attacked and his cousin was killed by guerrillas because of their military affiliations; and that he is closely associated with his cousin Oswaldo, an army lieutenant." *Ventura v. INS*, 264 F.3d 1150, 1155 (9th Cir. 2001), *rev'd on other grounds sub nom. INS v. Ventura*, 537 U.S. 12 (2002) (per curiam).

Moreover, we have found that threats by guerillas against elite military officers could form the basis of a well-founded fear of future persecution on account of political opinion. In *Artiga Turcios v. INS*, 829 F.2d 720 (9th Cir. 1987), for example, we explained that "[b]ecause of Artiga's former affiliation with the Salvadoran Army, his specialized combat training, and his participation in battles with the guerrillas, the guerrillas are likely to consider him a political opponent," and thus the threatening events that prompted him to flee El Salvator entitled him to withholding of deportation. *Id.* at 723. Similarly, in *Velarde v. INS*, 140 F.3d 1305 (9th Cir. 1998), we stated that "based on Velarde's position as a former intelligence officer and bodyguard to the President's daughters, 'the guerillas are likely to consider [her] a political opponent,'" and so the guerillas' threats against her prior to her departure made her fear of future persecution based

6

on political opinion well-founded. *Id.* at 1312 (quoting *Artiga Turcios*, 829 F.3d at 723). More generally, we have explained that "status as a government employee clearly suffices to show an imputed political opinion under our case law. We have stated that we consider 'persecution of those who work for or with political figures to be on account of the political opinion of their employer even if the nature of their work . . . is not in itself political.'" *Sagaydak v. Gonzales*, 405 F.3d 1035, 1042 (9th Cir. 2005) (quoting *Navas v. INS*, 217 F.3d 646, 659 n.19 (9th Cir. 2000)).

In light of the cases discussed, the record compels the conclusion that the ELN viewed Mayorga as rejecting the organization on political grounds. First, the group's threats on his life for "reject[ing] our cause" and committing "treason" by choosing to remain loyal to the government demonstrate that they ascribed a political motive to his actions. Second, the communications from ELN demonstrate that the guerillas knew that Mayorga was an elite officer close to the heads of government. ELN's continuing commitment to killing Mayorga as a "traitor" is on account of his perceived political opinion, or to put it differently, the political opinion the ELN imputed to him.

**4.** The BIA erred when it faulted Mayorga for not reporting the ELN's threats to the authorities. Mayorga testified before the IJ, who credited his

7

testimony generally, that such efforts would have been futile. He also provided other evidence – namely the country reports – supporting his futility testimony. *See Rahimzadeh v. Holder*, 613 F.3d 916, 922 (9th Cir. 2010) ("The absence of a report to police . . . leaves a gap in the proof . . . which the petitioner may attempt to fill by other methods," including establishing that the particular persecution is widespread and not controlled by the government). Those reports confirm that the Colombian government has been unable to protect similarly situated individuals. *See Afriyie v. Holder*, 613 F.3d 924, 931 (9th Cir. 2010) ("The applicant may . . . use generalized country conditions information to show that reporting such activity to the police would have been futile"). The State Department Country Reports included in the record indicate that the ELN kidnaps members of the security forces to use as political pawns, and that "security forces were . . . among the preferred victims of politically-motivated kidnappings." Moreover, "[k]idnapping continued to be an unambiguous, standing policy for . . . the ELN," and it has kidnapped both military personnel, and hundreds of civilians. Mayorga's testimony and the generalized country conditions information, taken together, compel the conclusion that Colombian authorities were unable to prevent the kidnappings recorded in the country reports and so will likely be unable to protect Mayorga and his family.

8

**5.** Accordingly, we hold that Mayorga is eligible for asylum. We therefore grant the petition for review and remand to the BIA to exercise its discretion whether to grant that relief. *See Khup v. Ashcroft*, 376 F.3d 898, 905 (9th Cir. 2004). Because the BIA's decision with respect to withholding of removal was based on its determination that persecution would not be on account of a protected ground, we also remand for reconsideration of that claim. *See INS v. Ventura*, 537 U.S. 12, 16–17 (2002) (per curiam). In his opening brief, Mayorga failed to address, and therefore has waived any challenge to, the IJ's determination that he is ineligible for CAT relief; the petition is thus denied as to that claim. *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1259–1260 (9th Cir. 1996).

**GRANTED in part; DENIED in part; REMANDED.**

*Mayorga-Esguerra v. Holder*, No. 06-72917

Callahan, Circuit Judge

I dissent.  In order to establish eligibility for asylum, Mayorga must demonstrate not only a well-founded fear of persecution, but he must also establish that the persecution he fears is on account of one of the five categories established by statute.  8 U.S.C. § 1101(a)(42)(A).  I disagree with the majority's conclusion that the evidence compels finding that the persecution he might face is on account of his political opinion.

Mayorga refused to join the National Liberation Army ("ELN") because of his loyalty to his country.  However, even if that is sufficient to establish that he held a pro-government political opinion, he must do more than demonstrate that he has that political opinion, or even that the ELN knew he had that opinion, to avoid removal.  He must demonstrate, with "*some* evidence[,] ... direct or circumstantial" that the political opinion was the *reason* for the ELN's persecution of him.  *INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992) (emphasis original).  "And if he seeks to obtain judicial reversal of the BIA's determination, he must show that the evidence he presented was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." *Id.* at 483-84.  After *Elias-Zacarias*, "[p]ersecution by anti-government guerillas may no longer, from that fact alone, be presumed to

be 'on account of' political opinion." *Sangha v. INS*, 103 F.3d 1482, 1487 (9th Cir. 1997). Rather, to prevail a "petitioner must prove something more than violence plus disparity of views." *Id.*

Mayorga testified that the threats against him and his family were because he refused to join the ELN. The ELN wanted him to train its guerilla fighters because of the specialized training he had received in the Colombian Army. He suspected the ELN also wanted him because of the knowledge he had regarding the protection of the Colombian president. He believed the ELN wanted his help with its plans to assassinate the president. Mayorga presented no evidence that the threats were based on his love of country or his political opinion against the ELN. He was threatened because he would not join them. Certainly, there was no evidence which would compel the conclusion that the reason the ELN chose to threaten Mayorga was his pro-government political opinion, imputed or real.

Unlike the majority, I do not believe that simply being affiliated with the military or the government automatically establishes that any threats are on account of an imputed political opinion. This does not comply with the Supreme Court's command that, to be eligible for asylum, Mayorga "must provide *some* evidence" of the ELN's motives behind its threats. *Elias-Zacarias*, 502 U.S. at 483 (emphasis original). Here, Mayorga did not. I respectfully dissent.