**Syed Jawad Wali NOUSHANI, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 04–70374.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 2006.

Filed June 21, 2006.

Garish Sarin, Esq., Los Angeles, CA, for Petitioner.

CAC–District Counsel, Esq., Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Elizabeth J. Stevens, Esq., U.S. Department of Justice, Civil Div./Office of Immigration Lit., Pamela S. Tanglao, Esq., U.S. Department of Justice, Environmental & Natural Resources Div., Washington, DC, for Respondent.

Before: FARRIS, FERNANDEZ, and THOMAS, Circuit Judges.

MEMORANDUM *

Syed Jawad Wali Noushani petitions for review of the final order of the Board of Immigration Appeals denying his request for asylum and ordering him removed. We have carefully reviewed the record and

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

found that it supports the Immigration Judge's findings that Noushani lacked credibility. Having so concluded, we need not reach Noushani's other properly-preserved claims of error. Noushani should have brought his Due Process claims to the BIA's attention. His failure to do so deprives us of jurisdiction to review these claims. *See Sanchez–Cruz v. INS*, 255 F.3d 775, 779–80 (9th Cir.2001).

Furthermore, there must be an "extraordinary circumstance" to reverse the BIA's decision not to accept a delinquent brief. *See Escobar–Ramos v. INS*, 927 F.2d 482, 485 (9th Cir.1991). The clerical error Noushani contends was responsible for the late-filed brief does not constitute an "extraordinary circumstance."

The petition for review is **DENIED.**

THOMAS, Circuit Judge, concurring:

Although I agree with the majority's disposition of this case, I feel obliged to point out the IJ's inappropriate treatment of Noushani during his removal hearing. The record in this case reveals an IJ "whose conduct can aptly be described as intemperate or even abusive and whose work must improve," in the words of the Attorney General. Memorandum from Attorney General Alberto Gonzales to Immigration Judges (Jan. 9, 2006). While Noushani's failure to present the due process concerns that such treatment raises to the BIA deprives us of the jurisdiction to grant his petition for review on this basis, it does not mean that we are required to ignore the IJ's unacceptable conduct.

The IJ was aggressive in his questioning of Noushani throughout the hearing, but a few exchanges are particularly troubling. Early in the hearing, when Noushani explained that he applied for his tourist visa via an application submitted by FedEx, the IJ addressed Noushani:

Judge to Mr. Noushani

Q. Sir, other than your self-serving claim that the American Consul requires people to mail in their visas, do you have any evidence that that is the case?

When Noushani responds that "[n]umerous people apply for a visa [in this way,]" the IJ continues:

Q. Sir, I'm not interested in numerous people. I'm interested in you producing evidence that there is any people, let alone you, that applied in the proper way. Do you have any evidence you can give me today that will verify what you claim that a personal interview was not required for you to obtain the visa? I'm not interested in what you claim happened to other people. None of them are here, neither are there any documents to prove that's how it was obtained other than your self-serving statement. Do you have anything to corroborate what you claim?

A. I don't have any evidence here, but in my country, I have a lot of evidence.

Q. Well, sir, guess what? We're not in your country. We're in this one. I'm not going to go fly there to find out. That was your job. You're responsible. And when I say that, I assume you and your attorney could have just written to the American Consul and said, on this date in so and so, my client received this visa. Would you please verify by letter that was the process. You know, something simply like that. Did you and your attorney bother to do something like that?

This treatment continued throughout the hearing. Referring to Noushani's testimony that another leader of the Moslem

League who was also the brother-in-law of the former prime minister of Pakistan had been convicted in absentia after leaving the country, the IJ asked "if they were able to do it to the brother-in-law of the former prime minister of Pakistan, why can't they do it to a lowly chapter president of the party? How come they didn't bother to do that for you, sir?"

Most egregious, perhaps, was the IJ's questioning of Noushani regarding his application for a tourist visa in spite of the fact that he arrived in the United States fully intending to apply for political asylum and remain here.

Judge to Mr. Noushani

Q. Now, sir, you said you came here because you knew this Government grants political asylum and gives human rights. You said you knew that when you came here this latest time. So why wouldn't you ask for it with a governmental consul or official in Pakistan, sir? Why instead did you give a false application to come here as an alleged tourist? Can't have it both ways, sir.

A. Well this much—I knew it this way that if you go to America, then you can get asylum.

Q. Oh so, you mean so our country, you believe, permits people to falsely enter this country under false pretenses and give them asylum but won't give a true asylee, a refugee that if they really make an application. You believe that's how our system works? Get here by cheating and crook and we'll grant you asylum, but we won't let a true asylee who tells us the truth come to this country. Is that what you really believe how our country works? * * * * [Y]ou're allegedly a political[ly] savvy individual. But you really believe that coming to this country with false, on false pretenses gives you asylum, but that this same Government that would permit you allegedly to do that would never give an asylee or refugee something if he told the truth at the outset with the American officials in his own country. Is that what you're telling me, sir? * * * * Why didn't you just ask an American Government official, sir, instead of [an] unknown person? Why didn't you ask a[n] actual government official, sir? Why didn't you bother doing that, you know, going to the source as opposed to relying upon some other person?

These are only a few examples from a record replete with such behavior. Because of procedural default, we cannot remand so that Noushani might have the full and fair removal hearing before a neutral fact-finder that he is guaranteed by the due process clause. *See Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir.2000); *Reyes–Melendez v. INS*, 342 F.3d 1001, 1007–08 (9th Cir.2003). That procedural default does not, however, excuse the IJ's abandonment of his role as a neutral fact-finder. Nor, in my view, does our denial of the petition for review constitute an endorsement of the conduct of the hearing.