NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

APR 4 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| NAUN GABRIEL MEDINA-GOMEZ; JOSUE GABRIEL MEDINA-URBINA,<br><br>     Petitioners,<br><br>  v.<br><br>PAMELA BONDI, Attorney General,<br><br>     Respondent. | No. 23-4116<br><br>Agency Nos.<br>A220-490-455<br>A220-490-456<br><br>MEMORANDUM<sup>*</sup> |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 1, 2025[**]
Portland, Oregon

Before: BYBEE, LEE, and FORREST, Circuit Judges.

---

    \*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    \*\*     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Petitioners Naun Gabriel Medina-Gomez and Josue Gabriel Medina-Urbina,[1] natives and citizens of Honduras, seek review of a decision by the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of their applications for asylum and withholding of removal. We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition for review.

When the BIA conducts its own review of the evidence and law, "our review is limited to the BIA's decision." *Rodriguez v. Holder*, 683 F.3d 1164, 1169 (9th Cir. 2012) (citation and internal quotation marks omitted). If the BIA incorporates the IJ's reasoning and conclusions into its own decision, we may also look to the IJ's decision "as a guide to what lay behind the BIA's conclusion[s]." *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010) (quoting *Avetova-Elisseva v. INS*, 213 F.3d 1192, 1197 (9th Cir. 2000)). Within this framework, we review for substantial evidence the factual findings underlying the BIA's denial of relief, *Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022), and review de novo due process claims, *Reyes-Melendez v. INS*, 342 F.3d 1001, 1006 (9th Cir. 2003).

1. Substantial evidence supports the agency's conclusion that Medina-Gomez failed to establish a nexus between the harm he suffered and fears and a protected ground. *See Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1016 (9th Cir. 2023)

---

[1] Medina-Gomez is the lead petitioner in this case. Medina-Urbina is Medina-Gomez's minor son. Medina-Urbina seeks relief from removal as a derivative beneficiary of his father.

("For both asylum and withholding claims, a petitioner must prove a causal nexus between one of her statutorily protected characteristics and either her past harm or her objectively tenable fear of future harm.").

Medina-Gomez, who proceeded *pro se* before the IJ, testified that in 2019, unidentified gang members approached him while he was at a field playing soccer with friends. They grabbed him by the back, punched him, and told him "don't mess with the maras." They then took out a pistol and fired two shots toward his feet. When he did not react, they put the pistol next to his ear and fired two more times. Medina-Gomez was "traumatized" by the shooting and his hearing was affected for approximately four months. Although Medina-Gomez did not leave Honduras until 2021, he received no additional threats from gang members.[2]

When asked why he thought the gang attacked him, Medina-Gomez stated, "I don't know, but you know, perhaps it's because years before, the death of my brother, and then I—the family of the mother of my child." Medina-Gomez explained that in 2014, gang members killed his brother because his brother owed the gang money. Medina-Gomez then stated that his "wife's family also was trying to escape." Medina-Gomez did not know whether they owed the gang money.

---

[2] Medina-Gomez also testified that one of his brothers fled Honduras and that, after the brother fled, gang members visited the family home, asked where his brother was, and acted "insulting" toward his mother. No family currently living in Honduras has been threatened or harmed.

Medina-Gomez also testified that he never owed the gang any money. When asked again why he thought the gang targeted him, Medina-Gomez stated, "Their motives I wouldn't know. Like I said before, that's probably coming from something way back. That's the only thing I could say. I couldn't find any justification for why they would do that."

Based on this testimony, the IJ considered whether Medina-Gomez had met his burden of establishing past persecution or a well-founded fear of future persecution on account of his membership in a family-based particular social group. It concluded he had not, and the BIA affirmed. Substantial evidence supports this conclusion, given there is no evidence in the record that the gang members who attacked Medina-Gomez were aware of his brother's identity. Approximately five years had passed since his brother's murder, and the only statement the gang members made to Medina-Gomez was, "don't mess with the maras." Furthermore, Medina-Gomez himself stated at least twice that he did not know why the gang targeted him.

2. The IJ did not violate Medina-Gomez's right to due process by preventing him from providing testimony or by failing to adequately develop the record on whether gang members targeted him on account of his membership in a family-based particular social group. *See Zamorano* v. *Garland*, 2 F.4th 1213, 1226 (9th Cir. 2021) (holding that if a respondent is *pro se*, an IJ must "scrupulously and

conscientiously probe into, inquire of, and explore for all the relevant facts").

The record shows that the IJ asked Medina-Gomez several questions about the gang's motives for targeting him, and Medina-Gomez was unable to explain why he thought the gang was motivated by his familial associations. *See id.* (noting that once a *pro se* petitioner's testimony established there was no basis for relief, "there was nothing left for the IJ to do"). Furthermore, although the hearing transcript shows that the IJ interrupted Medina-Gomez at various places during his testimony, nothing in the transcript indicates that the IJ "*prevented* him from providing relevant testimony." Rather, the transcript shows that the IJ provided Medina-Gomez an opportunity to share the details of his claims, took steps to make sure he understood his testimony, and assisted Medina-Gomez in fleshing out details by asking follow-up questions.

**PETITION DENIED.**